IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                            No. CR13-4082

LEVON DEAN, JR.,               TRANSCRIPT OF
                                 SENTENCING

        Defendant.

_____/

        The Sentencing held before the Honorable Mark W. Bennett, Judge of the United States District Court for the Northern District of Iowa, at the Federal Courthouse, 320 Sixth Street, Sioux City, Iowa, January 23, 2015, commencing at 3:30 p.m.

APPEARANCES

For the Plaintiff:      FORDE FAIRCHILD, ESQ.
                      Assistant United States Attorney
                      Ho-Chunk Centre - Suite 670
                      600 Fourth Street
                      Sioux City, IA  51101

For the Defendant:     ALAN G. STOLER, ESQ.
                      Suite 1004
                      1823 Harney Street
                      Omaha, NE  68102

Also present:          Pat Korth, U.S. Probation
                      Todd Monney
                      Troy Hansen

Reported by:           Shelly Semmler, RMR, CRR
                      320 Sixth Street
                      Sioux City, IA  51101
                      (712) 233-3846

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript.*

1          THE COURT:  Thank you.  Please be seated.

2          THE CLERK:  This is Case Number 13CR4082, United

3    States of America versus Levon Dean Junior.  Counsel, please

4    state your appearances.

5          MR. FAIRCHILD:  Forde Fairchild for the United States.

6          MR. STOLER:  Good afternoon, Your Honor.  May it

7    please the Court.  Alan Stoler on behalf of Levon Dean.

8          THE COURT:  Good afternoon, Mr. Stoler.  Mr. Stoler,

9    have you had a full, fair, and complete opportunity to review

10   the presentence report with Mr. Dean?

11         MR. STOLER:  I have, Your Honor.

12         THE COURT:  And in this case probation scored it as a

13   total offense level 25, criminal history category 4.  Count 1

14   carries a 0- to 20-year sentence.  Count 6 carries 5-year

15   consecutive to all other counts; Count 7, 25 years consecutive

16   to all other counts; Count 9, 0 to 10 years.  Counts 1 through

17   3, excuse me, carry 0 to 20.  And the advisory guideline range

18   is 84 to 105 months.  My understanding is you don't actually

19   object to those calculations, or do you?

20         MR. STOLER:  The -- those I do not object to, no.  The

21   presentence report that I had had adjusted offense level of 28,

22   Your Honor.

23         THE COURT:  Oh.  Well -- yep, that's right.  Let me

24   just -- it's -- I've had a difficult day.  You have an objection

25   to the carjacking counts; correct?

1          MR. STOLER:  The carjackings and then the loss on the

2     one vehicle.

3          THE COURT:  Yeah.  Well, they kind of go together;

4     right?

5          MR. STOLER:  Yeah.

6          THE COURT:  Yeah.  That's right.  So it'd be a 28.  If

7     I sustain those objections, it'd be a 25.

8          MR. STOLER:  25.

9          THE COURT:  Yes.

10          MR. STOLER:  And I don't have objection to that.

11          THE COURT:  Right, right.  Does the government --

12     what's the government's position with regard to his objections

13     to the carjacking enhancement and the $10,000 enhancement?  If I

14     find no carjacking, that enhancement goes out.

15          MR. FAIRCHILD:  I think probation is correct, but

16     that's the extent of the record I'll make.

17          THE COURT:  Do you want to have any argument on it?

18          MR. STOLER:  No, Your Honor.

19          MR. FAIRCHILD:  No, Your Honor.

20          THE COURT:  Probation is correct in the sense that I

21     have discretion to consider acquitted conduct.

22          MR. FAIRCHILD:  Exactly right.

23          THE COURT:  Yeah.  And I do have discretion to

24     consider acquitted conduct, and I've exercised that discretion

25     historically not to enhance people's sentence based on acquitted

1    conduct.  And so I'm going to sustain the defense objections.

2    And I think that brings us to a 25, criminal history category 4.

3            What's the government's sentencing position?

4            MR. FAIRCHILD:  The government makes no specific

5    recommendation.  I disagree with Mr. Stoler's reasons for

6    variance.  I agree with probation's discussion of the guidelines

7    but make no specific recommendation.

8            This is a case where when he was willing to plead I

9    thought 13 years was within the range of reasonableness.  He, of

10   course, went to trial.  We found out more bad stuff about him

11   during trial, but there's still a broad range of reasonableness.

12   I think the guidelines are correctly scored.  I'm resisting a

13   departure.  I'm resisting a variance, but I think the Court has

14   a lot of discretion here to fashion a sentence.

15           THE COURT:  Why don't we hear your variance argument.

16           MR. STOLER:  Your Honor, obviously the Court knows

17   this case, and just with the sentencing of the brother, Jamal

18   Dean, I'm submitting to the Court that looking at the total

19   picture, looking at the 3553 factors, determining what is an

20   appropriate sentence, that sentencing somebody to a

21   constitutionally mandated 30-year sentence is more than

22   sufficient to accomplish the goals of sentencing and to account

23   for the criminal conduct in this case.

24           In looking at Levon Dean, the individual, looking at

25   his involvement, obviously he was wrong to be involved.  I don't

1    think he was the main culprit, but that doesn't excuse his

2    conduct, and I don't mean by anything I'm saying to excuse that.

3    He obviously had to have a conception of what activities his

4    brother was going to undertake and had undertaken, at least by

5    the time of the -- for sure by the time of the second robbery,

6    and I recognize that.

7         But looking at his age and his background and but for

8    having been convicted of aiding and abetting on two separate

9    guns on two separate occasions, we'd be looking at a -- I'd be

10   arguing for a much less sentence than what I'm urging the Court

11   to impose in this case.

12        But in considering that a sentence of 360 months is

13   mandatory, I would submit to the Court that any sentence you

14   impose on the crimes other than the gun crimes be as little as 1

15   day and then make the 30 years consecutive to that 1 day.

16        I would submit to the Court that that should be more

17   than sufficient to accomplish the goals as I've indicated and

18   especially a sentence that's not greater than necessary based

19   upon Levon Dean's involvement in these crimes, Your Honor.

20        THE COURT:  He does have ten criminal convictions that

21   are unscored by my count.

22        MR. STOLER:  I believe a lot -- most, if not all,

23   those points relate to either shopliftings or disturb -- excuse

24   me, disturbing the peaces or possession of marijuana.  I think

25   that only four counted under the criminal history category of

1    those --

2         THE COURT:  Right.

3         MR. STOLER:  -- those things.  I think the nature and

4    types of those types of crimes would score only in the one-point

5    category so of lesser -- lesser-type crimes.  I recognize --

6         THE COURT:  He has very little history of violence.

7         MR. STOLER:  He doesn't.  I mean, that's correct.

8         THE COURT:  Unlike his brother.  I mean, they're very,

9    very different -- they score pretty much the same, but they're

10   very, very different criminal histories.

11        Have you run across this case?  It seems to me several

12   years ago I got reversed for saying that the stacking mandatory

13   minimums like in this case which total 30 years -- I don't

14   remember what they were in that other case -- were sufficient

15   but not greater than necessary and I gave zero on the remaining

16   counts, and the circuit said you have to -- reversed me because

17   they said, you know, they have to be consecutive and you can't

18   be consecutive to nothing.

19        MR. STOLER:  That's why I asked for one day, Your

20   Honor.

21        THE COURT:  Do you recall that case or . . .

22        MR. STOLER:  I don't.

23        THE COURT:  Yeah.

24        MR. STOLER:  But I've had a similar situation in

25   another case in Nebraska that that issue came up as to

1    sentencing in that regard.

2              THE COURT:  So what are the reasons?  I mean, going

3    from 84 months down to 1 day is an extraordinary variance.

4              MR. STOLER:  It's an extraordinary variance if we're

5    looking at -- it's not an extraordinary variance if we're

6    looking at the total sentence.

7              THE COURT:  I agree with you, but I think it's

8    impermissible to do that.  No, I totally agree with you.

9              MR. STOLER:  Because the ultimate sentence is what

10   we're considering under the 3553 factors.  And when you're

11   calculating the total sentence that encompasses a sentence of a

12   mandatory 360 months, there wouldn't be a need for anything

13   further than that to achieve the goals of sentencing.  So the

14   variance for -- I guess the variance would count toward the

15   whole picture is how I would argue that to you, Your Honor.

16             THE COURT:  Does the government think a sentence of

17   360 months and 1 day is sufficient but not greater than

18   necessary to achieve all of the sentencing purposes in this

19   case?

20             MR. FAIRCHILD:  360?  So the mandatory --

21             THE COURT:  Well, that's the 30 years; right?

22             MR. FAIRCHILD:  The 30 years plus a day?

23             THE COURT:  Yeah.

24             MR. FAIRCHILD:  Is that sufficient but not greater

25   than necessary?

1          THE COURT:  Is that sufficient but not greater than

2     necessary to achieve all of the sentencing purposes?

3          MR. FAIRCHILD:  There is a range of reasonableness.

4     That might be -- that might be reasonable.  The defendant's

5     criminal history and conduct I think militate against that, but

6     it's -- I'm not willing to concede it, but it may very well be.

7          THE COURT:  How do you think I'm supposed to look at

8     it?  Do you think I'm supposed to look at the overall sentence?

9          MR. FAIRCHILD:  No, I don't think so, not when we have

10    924(c)'s.  I think that's Congress's intent that armed conduct

11    is punished additionally and separately.  So I think in the case

12    of 924(c)'s, they do want you to look at it separately.  And

13    when you're then talking about variances, I think you are -- you

14    should look at the guideline range independent of the

15    congressional additional punishment.

16         THE COURT:  So I really have to look at this if he was

17    convicted only on Counts 1 through 3 would I vary down to 1 day.

18         MR. FAIRCHILD:  I think that's right, but I'm not

19    confident in that.  I think that's right, but I'm not confident

20    in that.  Once again, I'm not giving you good advice, Your

21    Honor, and I'm sorry.

22         THE COURT:  In terms of Counts 1, 2, and 3, how do you

23    look at the relative culpability of each of the defendants, the

24    Dean brother defendants?

25         MR. FAIRCHILD:  Yes, sir.  Levon Dean followed his

1    brother into -- repeatedly throughout his life but in this case

2    two very violent instances.  Levon Dean was appropriately held

3    responsible for that under aider and abettor.

4            But Levon Dean is not the -- is not as culpable in

5    this case as Mr. Jamal Dean is.  Levon Dean did not have the

6    weapons during either of the offenses, though he absolutely was

7    part of a team in full knowing.  And -- but he didn't hit J.R.

8    He didn't hit C.B.  He did have the gun when Hope Marsh was

9    threatened, and he hit her and said follow her (sic).  But there

10   we even have a literal case of him following his brother.

11           So the relative culpability is very distinctly

12   Mr. Jamal Dean is far more culpable for this crime.  He's far

13   more dangerous.  Levon Dean is a follower as evidenced in this

14   crime spree.

15           And I'm not shrinking from, you know, Mr. Levon Dean's

16   a dangerous person, but relative culpability, Jamal Dean's far,

17   far more culpable, sir.

18           THE COURT:  Mr. Stoler, you think I can look at it

19   totally separately, I mean, and just say -- I mean, I think I'm

20   required to look at it separately.  And, you know, there's no

21   way I would -- if I was just looking at the conduct in Counts 1

22   through 3, I might do a variance, but I wouldn't vary down to

23   one day, and I don't think there's a judge in the country that

24   would.

25           MR. STOLER:  I accept that, but I don't agree with the

1  concept that you don't look at the total -- the big picture of

2  what -- the sentence that you're imposing because ultimately

3  that's what you're doing.  You're imposing a sentence taking

4  into account the guidelines and taking in account what Congress

5  has mandated as to a mandatory sentence and determining all of

6  that combined what is the appropriate sentence to impose on

7  Mr. Dean.

8          THE COURT:  Do you have a case that actually says

9  that?

10         MR. STOLER:  I'll be honest.  I haven't researched it

11 from that standpoint.  I've researched it from the standpoint of

12 considering the variance and how the ultimate determination of

13 the factors we look at comes into play, and one that keeps

14 coming at to me is a sentence that's no greater than necessary.

15 And the whole sentence is what we're looking at when we're

16 making that determination.  So I have quarrel with parsing them

17 out because we're parsing out 30 years and ignoring it.  That

18 doesn't make any sense.

19         MR. FAIRCHILD:  You know, hearing --

20         THE COURT:  But it may be congressional's will even if

21 it doesn't make sense to you.

22         Anything else either lawyer wants to add --

23         MR. FAIRCHILD:  No.  Thank you, Your Honor.

24         THE COURT:  -- on the appropriate -- anything else on

25 the appropriate sentence?

1          MR. STOLER:  No, Your Honor.  I'll submit the matter

2     to the Court.

3          THE COURT:  Okay.  Anything else I need to do

4     before -- now, you objected to the offense conduct statement,

5     but do I need to rule on those objections?

6          MR. STOLER:  I don't believe so because I've accepted

7     the guideline determinations.

8          THE COURT:  Yes, right.

9          MR. STOLER:  I just did that, Your Honor, I -- that

10    was probably my fault.  When it read to me that -- you saw the

11    trial, and I know that you saw the trial.

12         THE COURT:  Right.

13         MR. STOLER:  I don't need to argue those things I

14    argued at trial again, and I assume by objecting to what I did

15    object to that that would encompass that so . . .

16         THE COURT:  Mr. Dean, you have the right to say

17    anything to me you want to.  You don't have to say anything.

18    You have a right to remain silent.  If you exercise your right

19    to remain silent, I will not hold it against you in any way.

20    But if you'd like to say something, I'd be happy to hear from

21    you.  Is there anything you'd like to say?

22         THE DEFENDANT:  I don't really want to make you any

23    madder.  I don't want to say nothing.

24         THE COURT:  Okay.  You don't want to say anything?

25         THE DEFENDANT:  Yeah.

1        THE COURT:  Okay.  That's fine.  Thank you.

2        Okay.  In examining the Title 18, 3553(a) factors, I

3   am going to do a variance, and I'm going to vary down from 84

4   months down to 40 months, but I'm going to add to that because

5   I'm going to give you a chance to appeal it because if I could

6   go down -- I don't think I have discretion to go down to one

7   day, but I'm going to make a record on that so you can appeal

8   it.  And if it comes back, then I'll go down to one day.  I

9   just -- this is one of those rare cases where I don't think I

10  have discretion to do what you want me to do, and that may be --

11  I may be misreading the law or misunderstanding it, and I

12  recognize I may be doing that.  So I'm going to try and make a

13  very thorough record on this.

14        So I'm varying from 84 months down to 40 months

15  because I think even though Levon was the older brother, I

16  actually thought he was the younger brother based on what I

17  heard in trial.  And I might not have remembered if they

18  testified about ages.  To my way of thinking he was clearly the

19  follower.

20        While he has a fairly extensive criminal history, it's

21  over relatively minor things.  Does not really have any

22  significant history of any violence.  And he wasn't the weapons

23  guy, and he wasn't kind of leading the charge.  He was much more

24  of a follower.  So those are the reasons why I'm varying down to

25  40 months.

1          And it's my view that I have to look at it separately.

2   If I could look at a combined package, I totally agree with you,

3   Mr. Stoler, that 360 months plus 1 day on Counts 1 through 3 is

4   more than suff -- not just sufficient and not greater than

5   necessary.  In my view it's more than sufficient for a sentence

6   in this case.

7          But whether I'm operating under a misguided view of

8   the law or whether it's an accurate view of the law, I don't

9   think I can look at it that way.  But if I could, I would agree

10  with your argument, and I would sentence to the two mandatory

11  minimums which total 360 months and then give 1 additional day.

12          But because I don't think I have discretion to do

13  that -- and that's -- if I'm wrong about that, that's reversible

14  error automatically because I'm saying I don't think I have the

15  discretion to go down that low because I don't think I can look

16  at the overall sentence.  And I think we all agree that nobody

17  on Counts 1 through 3 would actually vary down to 1 day if that

18  was standing alone.

19          So I am going to impose a sentence of 400 months, and

20  that would be based on 40 months on Counts 1 through 3, 40

21  months on Count 9 all to run concurrently with each other, and

22  then the consecutive 25 years on Count 7 and 5 years on Count 5

23  to run consecutive to each other and consecutive to the other

24  counts.  And I believe that totals 400 months.  Is that correct?

25          MR. STOLER:  That's correct.

 1          THE COURT:  So it's my judgment that you are hereby

 2  committed to the custody of the Bureau of Prisons to be

 3  imprisoned for a total term of 400 months.  Is there a facility

 4  you'd like me to recommend?

 5          MR. STOLER:  Your Honor, I don't believe he would

 6  qualify for a medium based upon that sentence, so it would have

 7  to be a USP.  I would ask for it as close to this area so family

 8  can visit with him.

 9          THE COURT:  Okay.  And I believe that would be

10  Leavenworth.

11          MR. STOLER:  Be Leavenworth, yeah.

12          THE COURT:  So I'll recommend Leavenworth or another

13  facility consistent with Mr. Levon Dean's security and custody

14  classification as close to Sioux City, Iowa, as possible.  I am

15  going to recommend the 500-hour residential drug treatment

16  program.

17          Upon release from imprisonment, you'll be placed on

18  supervised release on all counts for three years to run

19  concurrently.

20          While you're on supervised release, you'll have

21  standard conditions contained in your judgment.  You'll also

22  have some special conditions.

23          You can't violate any state, local, or federal law.

24  You can't possess any illegal drugs.  You can't possess

25  firearms, ammunition, or other destructive device or dangerous

1  weapons.  You'll successfully participate in the testing and

2  treatment for substance abuse.  While you're on supervised

3  release, you're not allowed to go to bars or taverns or other

4  establishments whose primary source of income is derived from

5  the sale of alcohol.

6        You'll also participate in any mental health treatment

7  and evaluation recommended by the U.S. Probation Office

8  including taking any authorized -- duly legally authorized

9  medications.

10        You'll need to seek regular employment and attend any

11  employment workshops.  And until you obtain full-time

12  employment, you may be required to perform up to 20 hours of

13  community service per week.

14        You won't be allowed to associate with any gang

15  members, prospects, or associate members or wear any gang

16  clothing or insignia.  You'll not have any contact while you're

17  in prison or on supervised release with the victims set forth in

18  paragraph 10.  You'll also be subject to the standard search

19  condition which means United States probation officers can

20  search your person, anyplace you live, any automobile, motor

21  vehicle, motorcycle, et cetera, all your personal property

22  including any cellphones, smart phones, cameras, electronic

23  storage devices, iPads, computer, thumb drives, flash drives,

24  et cetera.

25        You don't have the ability to pay a fine, so the fine

1   is waived. There's a hundred-dollar special assessment on each

2   of the six counts due and owing. You can pay that pursuant to

3   the Bureau of Prisons inmate financial responsibility program.

4   You're remanded to the custody of the United States marshal to

5   serve this sentence.

6           You have a right to appeal the sentence that I've

7   imposed. If you decide to appeal, you need to file a written

8   notice of appeal no later than 14 days from the date your

9   judgment is filed. If you can't afford to pay for the costs of

10   an appeal or pay for a lawyer on appeal, those costs will be

11   paid on your behalf.

12           I'd ask the U.S. marshals to accommodate a family

13   visitation.

14           Mr. Stoler, anything else?

15           MR. STOLER: No, Your Honor.

16           THE COURT: Okay. Thank you for your representation.

17           And anything else, Mr. Fairchild?

18           MR. FAIRCHILD: Since this will be appealed, just for

19   the record, government objects to the variance and the extent of

20   the variance in case I wasn't sufficiently clear. Thank you.

21           THE COURT: Okay. Thank you. Anything else from

22   anybody?

23           Okay. Good luck to you, Mr. Dean. Thank you. We'll

24   be in recess.

25           (The foregoing sentencing was concluded at 3:54 p.m.)

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

CERTIFICATE

1

2          I certify that the foregoing is a correct transcript

3     from the record of proceedings in the above-entitled matter.

4

5

6          S/Shelly Semmler                    2-9-15
           Shelly Semmler, RMR, CRR              Date
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*