United States Court of Appeals

For the Eighth Circuit

_____

No. 15-1263
_____

United States of America

*Plaintiff - Appellee*

v.

Levon Dean, Jr.

*Defendant - Appellant*

_____

No. 15-1349
_____

United States of America

*Plaintiff - Appellee*

v.

Jamal Dean

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Northern District of Iowa - Sioux City

_____

Appellate Case: 15-1263    Page: 1    Date Filed: 12/29/2015 Entry ID: 4350326

Submitted: September 24, 2015
Filed: December 29, 2015

———————

Before LOKEN, BEAM, and SHEPHERD, Circuit Judges.

———————

BEAM, Circuit Judge.

Levon and Jamal Dean, brothers, appeal their convictions and sentences arising out of armed robberies of two Sioux City area drug dealers in violation of the Hobbs Act,[1] 18 U.S.C. § 1951, and related counts. We affirm the district court.[2]

I.    BACKGROUND

Viewed in the light most favorable to the prosecution, the trial evidence established the following facts. On April 15, 2013, Jessica Cabbell visited her friend

---

[1] The Hobbs Act proscribes robbery that affects interstate commerce, making what would often be a state crime, a federal crime. United States v. Dobbs, 449 F.3d 904, 911 (8th Cir. 2006). The Supreme Court has granted certiorari in a case that may ultimately limit the reach of the Hobbs Act in cases involving robbery of individual drug dealers. See United States v. Taylor, 754 F.3d 217 (4th Cir. 2014), cert. granted, 136 S. Ct. 26 (Oct. 1, 2015) (granting certiorari on the issue of whether the government can meet the interstate commerce element by relying exclusively on evidence that the robbery of a drug dealer is an inherent economic enterprise that satisfies the interstate commerce element of the offense). However, unlike the Fourth Circuit, our precedent requires the government to actually prove that robbery of a drug dealer is linked to interstate commerce, compare Taylor, 754 F.3d at 222-23, with United States v. McCraney, 612 F.3d 1057, 1064-65 (8th Cir. 2010), so we doubt that the ultimate outcome in Taylor will affect the instant case.

[2] The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

Reggie Galvin in South Sioux City, Nebraska. Sarah Berg was also at Galvin's, and Cabbell, a prostitute, told the other two she was scheduled to have a "date" with J.R., who was a known methamphetamine and marijuana dealer from LeMars, Iowa, later that night. Both women had previously dealt with J.R. as a drug dealer and had exchanged sex for drugs with him. However, J.R. apparently owed Berg money based upon the previous dealings, or according to Berg, had taken $400 of her money. Berg expressed a desire to collect that money. Berg and Galvin decided that in order to collect the money J.R. owed, they would need "muscle." It was agreed that the Dean brothers would provide the muscle.

The Deans arrived at Galvin's house, and then Berg, Cabbell, and the Deans proceeded to the Palmer House Motel in Sioux City, Iowa, where Cabbell's "date" with J.R. was to take place. Cabbell had informed J.R. that another woman would join them at some point, but did not tell J.R. that it would be Berg. Cabbell arrived alone at J.R.'s room, and she and J.R. smoked methamphetamine together. A bit later, Berg and the Deans arrived. Berg immediately confronted J.R. about the stolen money, while Jamal pulled a gun on J.R. and demanded the money in question. Meanwhile, Levon ransacked the room looking for money and drugs. Cabbell left the scene because she alleges she did not know a firearm would be involved. When J.R. reached for his car keys, Jamal hit J.R. on the head with the gun, and Berg took J.R.'s car keys, cell phone, and a pipe containing methamphetamine. Jamal threatened to kill J.R. if he called police. With Berg driving, Berg and the Deans drove away in J.R.'s car. Despite Jamal's warning, J.R. used the motel manager's cell phone to call 911 and report the robbery. Cabbell, Berg, and the Deans again met up at Galvin's house in Nebraska after the robbery and lamented the lack of spoils from the robbery.

On April 24, 2013, Levon and Jamal robbed another methamphetamine dealer (C.B.) in the dealer's home, at gunpoint. Jamal hit C.B. with his gun, and the Deans stole approximately $300 in cash, about 20 grams of methamphetamine, a digital scale, electronic and computer equipment, and old cell phones. The Deans ordered

-3-

Hope Marsh, who was living there, to pack her stuff because she was to come and live with them. She apparently complied, and the trio drove away in C.B.'s two cars. Sioux City police issued arrest warrants for the Deans, and Levon was arrested in Sioux City pursuant to the warrant. On April 29, police attempted to pull over a vehicle Jamal was riding in during a traffic stop. Because he knew about the warrant, Jamal instructed the car's driver to try to evade police. When the driver eventually did stop the car, Jamal jumped out and shot his rifle in an attempt to evade capture. Jamal eventually disposed of the loaded weapon in a nearby alley trash dumpster and escaped from authorities. He was eventually arrested in Texas in May 2013.

In April 2014, an eleven count, Third Superseding Indictment was returned charging Jamal, Levon, and Berg with: conspiracy to commit robbery under the Hobbs Act, in violation of 18 U.S.C. § 1951 (Count 1); Hobbs Act robbery, in violation of 18 U.S.C. §§ 2 and 1951 (Counts 2 and 3); carjacking, in violation of 18 U.S.C. §§ 2 and 2119(1) (Counts 4 and 5); possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii), and 924(c)(1)(C)(i) (Counts 6 and 7); being felons in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2) (Counts 8 and 9); and interstate transportation of a stolen vehicle, in violation of 18 U.S.C. §§ 2 and 2312 (Counts 10 and 11).[3] All three defendants filed motions to sever in which each argued that Berg's trial should be severed and tried separately. A magistrate judge[4] severed Berg's trial from the Deans', and Berg ultimately pleaded guilty to several counts and testified at trial against the Deans.

---

[3] The original Count 8 was severed prior to trial, and the remaining counts were renumbered accordingly. Count 11, which was by then Count 10, was dismissed prior to reaching the jury.

[4] The Honorable Leonard T. Strand, United States Magistrate Judge for the Northern District of Iowa.

On August 29, 2014, the jury returned a verdict finding Jamal guilty on the offenses charged in Counts 1, 2, 3, 4, 6, 7, and 8, and acquitted him of the charges in Counts 5 and 9. The jury found Levon guilty of the charges in Counts 1, 2, 3, and 8, and acquitted him of the charges in Counts 4, 5, and 9. In addition, Levon was acquitted of the primary charges in Counts 6 and 7, but was found guilty on each count of the lesser included offense of possessing a firearm in furtherance of a crime of violence. The district court denied the motions for judgment of acquittal prior to the jury's verdict, and the post-trial motions for judgment of acquittal and new trial. Jamal's sentencing Guidelines range was 140-175 months in addition to mandatory consecutive minimums of seven and twenty-five years on the 18 U.S.C. § 924(c) counts. See 18 U.S.C. § 924(c)(1)(D)(ii) (mandatory consecutive sentence). However, the district court varied upwards to sentence Jamal to life in prison. Levon was sentenced to 400 months, which included a 360-month mandatory minimum consecutive sentence for the § 924(c) offenses. Without the mandatory minimums, Levon's Guidelines range was 84-105 months. Thus, the district court gave Levon a substantial downward variance of 40 months for the Guidelines sentence, which was by statutory directive consecutive to the 360-month mandatory sentence.

On appeal, Levon challenges the sufficiency of the evidence to establish a nexus to interstate commerce required for the Hobbs Act robberies; the sufficiency of the evidence for his firearm convictions; and the reasonableness of his sentence. Jamal argues the court erred in refusing to exclude in limine any reference to gangs or gang affiliation; there was insufficient evidence of the nexus to interstate commerce for the Hobbs Act robberies; the district court erred in refusing to give supplemental jury instructions regarding the nexus to interstate commerce; the government proved multiple, as opposed to a single, conspiracy and the district court's failure to give a proffered jury instruction in that regard; there was insufficient evidence to convict him of carjacking; the district court should have granted a new trial in the interests of justice; and his life sentence, imposed after the district court

Appellate Case: 15-1263    Page: 5    Date Filed: 12/29/2015 Entry ID: 4350326

heard hearsay testimony at the sentencing hearing, was procedurally flawed and violates due process.

## II. DISCUSSION

A judgment of acquittal is only appropriate if the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). A guilty verdict should be overturned only if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Sanchez, 789 F.3d 827, 834 (8th Cir. 2015). Like the district court, we view the evidence in the light most favorable to the guilty verdict, and grant all reasonable inferences that are supported by that evidence. Id.

### A. Hobbs Act

Both defendants assert that there was insufficient evidence linking the robbery of J.R., C.B., or both to interstate commerce to support a Hobbs Act violation. The district court denied this point in the post-trial motions, noting that our precedent quite liberally construes the nexus-to-commerce requirement in the Hobbs Act. Indeed, where a federal statute has an express jurisdictional nexus-to-commerce requirement, the crime's actual connection to interstate commerce may be quite small. United States v. McAdory, 501 F.3d 868, 871 (8th Cir. 2007).

The Deans reference a three-part test (originating in the Fifth Circuit, but cited with approval in United States v. Quigley, 53 F.3d 909, 910-911 (8th Cir. 1995)) to determine whether there is an adequate nexus to interstate commerce in a Hobbs Act case involving robbery of a drug dealer: (1) whether the robbery affected the victim's ability to buy and sell drugs in interstate commerce; (2) whether there is a likelihood that as a result of the robbery, the victim would have to deplete the assets of an entity engaged in commerce; and (3) whether the number of individuals victimized or the

-6-

sum at stake is so large that there will be a cumulative effect on interstate commerce. United States v. Collins, 40 F.3d 95, 100 (5th Cir. 1994). As we understand this test, only one of these three prongs must be met in order to establish the interstate-commerce nexus. Here, the first prong is met for both robberies. There is ample evidence that C.B. was robbed of an amount of methamphetamine (20 grams) that could have and would have been distributed by C.B. The evidence with regard to J.R. is less ample, but sufficient for the jury to convict on this count. The evidence indicates that J.R. was hoping to exchange methamphetamine for sex with Cabbell, and the interstate encounter was interrupted by Berg and the Deans before the transaction was complete.

Further, under our precedent, because the Deans robbed drug dealers, the offense arises under the Hobbs Act so long as there is any evidence regarding the interstate character of the drug dealing–i.e., that the drugs came from a different state than the dealings, that the dealer had customers in different states, or both. United States v. McCraney, 612 F.3d 1057, 1064-65 (8th Cir. 2010). And, because the transactions at issue took place in the Sioux City area, a metropolitan area reasonably encompassing three different states, the interstate nexus requirement was easily met in this case. Indeed, the evidence at trial indicated that C.B. received his methamphetamine from Nebraska and sold it in Iowa, South Dakota, and Nebraska. J.R. testified that he sold methamphetamine in South Dakota and Iowa.

The Deans argue that Quigley mandates a different result. In that case, we held that there was an insufficient nexus to interstate commerce when defendants robbed two intoxicated Native Americans of .80 cents and a pouch of chewing tobacco on a road between Valentine, Nebraska, and Crookston, Nebraska, where the victims were en route to purchase alcohol. 53 F.3d at 910-11. We rejected the government's argument that the robbery affected interstate commerce by preventing the victims from reaching the store to make their alcohol purchase. Id. at 911. For the reasons

-7-

stated above, the current factual scenario is much more similar to McCraney than Quigley and we affirm the Deans' Hobbs Act convictions.

## B. Conspiracy

Jamal's next sufficiency argument is that instead of proving a single conspiracy, the evidence instead showed that there were multiple conspiracies–one to rob J.R. and another one to rob C.B.–resulting in a variance between the indictment and proof, and requiring a judgment of acquittal. Whether one conspiracy or multiple conspiracies have been proved is determined by the totality of the circumstances. United States v. Slagg, 651 F.3d 832, 842 (8th Cir. 2011). And, if a variance has occurred, reversal is warranted only if the variance infringed upon a substantial right. Id.

Jamal's argument that the robberies of J.R. and C.B. were not related enough to support a single conspiracy count is well taken. J.R. was robbed to pay back a debt allegedly owed to Berg, and the robbery of C.B. happened nine days later. However, as the government points out, the two robberies were similar in style, means, and motive, and both were carried out by the Deans. Jamal cites United States v. Delgado, 653 F.3d 729, 736 (8th Cir. 2011), in support of his argument that multiple conspiracies (as opposed to a single conspiracy) were proven in the instant case. In Delgado, the government was able to establish that a series of separate crimes was all part of one overarching agreement to conspire. It did so based upon evidence of significant overlap and connection between the conspirators in a large scale cocaine distribution scheme. Id. Jamal claims that such evidence is lacking in this case. Given our standard of review of the jury's verdict, we reject Jamal's arguments. The circumstantial evidence admitted at trial–the robberies were both committed by the brothers acting in concert; both targets were low-level methamphetamine dealers; both robberies took place in Sioux City; and the robberies occurred during a relatively short two-week time span–is enough to sustain the jury's verdict. And, even if there was a variance, such a variance was harmless error because it did not infringe on

-8-

Jamal's substantial rights. The evidence clearly showed Jamal participated in both robberies (and thereby both conspiracies) as the gunman. Because Jamal would have been guilty of both conspiracies, his substantial rights were not violated if two conspiracies were proven instead of one. Id.

Relatedly, Jamal argues there was no proof of an agreement regarding the alleged object of the conspiracy–to rob drug traffickers. Jamal argues that the reason the two men were robbed had very little to do with the fact that they were drug traffickers, and there was certainly no agreement to rob drug traffickers. The government asserts that the fact that Jamal chose known drug traffickers as the two victims of his robberies allowed the jury to infer that robbing drug dealers was the object of the conspiracy. Again, given our standard of review of the jury's verdict in a motion for judgment of acquittal, we reject Jamal's sufficiency arguments in this regard. Jamal argues that J.R. and C.B. were not big time drug dealers, and arguably J.R. did not come to Sioux City for the purpose of selling drugs, but those were arguments he also unsuccessfully made to the jury. In fact, the evidence showed that J.R. had in the past, and was that day again hoping to barter drugs for sex when contacted by Cabbell. Accordingly, there was sufficient evidence that J.R. was poised to exchange drugs for sex with Cabbell and that the Deans' agreement to rob him significantly thwarted that plan. Further, the 20 grams of methamphetamine taken from C.B. rather easily allowed the jury to infer an agreement to rob a drug dealer. Accordingly, Jamal's object-of-the-conspiracy argument is without merit.

### C. Carjacking

Jamal next argues there was insufficient evidence to convict him of carjacking when he stole J.R.'s[5] vehicle following the robbery. A conviction pursuant to 18

---

[5]Jamal and Levon were both acquitted of carjacking in Count 5, which was the incident with regard to C.B.'s vehicles.

Appellate Case: 15-1263    Page: 9    Date Filed: 12/29/2015 Entry ID: 4350326

U.S.C. § 2119 requires the government to prove that the defendant took a motor vehicle "from the person or presence of another" and "with the intent to cause death or serious bodily harm." Jamal argues there was no evidence that Jamal intended J.R. to suffer serious bodily harm as a result of the carjacking. The government responds that after Berg had taken J.R.'s car keys, Jamal's act of hitting J.R. in the head with the rifle and threatening to kill him if he called police satisfies the serious-bodily-injury element. We agree that there was evidence presented at trial of both the threat to J.R.'s life, in addition to the bloody wound, and later medical care following the blow to the head that would allow the jury to find this element of the offense. See United States v. Waldman, 310 F.3d 1074, 1078 (8th Cir. 2002) (holding that evidence of threats to kill during a carjacking if the driver did not follow instructions was sufficient to satisfy the serious bodily injury element); United States v. Garcia-Alvarez, 541 F.3d 8, 16 (1st Cir. 2008) (holding that the wound that left victim bleeding and requiring medical care and surgery satisfied the serious bodily injury element). Jamal seems to argue that, given that he had a gun at the scene, he certainly could have caused a more serious injury than he did. However, the government is not required to prove that Jamal caused the most serious injury possible. Here there was sufficient evidence of a serious bodily injury to satisfy the statute.

Jamal further argues that the lack of proximity of J.R. to the car at the time of his injury precludes conviction under § 2119. And Jamal asserts that the stolen car was incidental to the robbery and not an object of it. However, the defendant unsuccessfully made similar arguments in United States v. Casteel, 663 F.3d 1013, 1019-20 (8th Cir. 2011) (holding that the elements of the "carjacking statute may be satisfied when the victim of the carjacking is inside a building and the stolen car is parked outside"),[6] and Garcia, 541 F.3d at 16 (holding that the carjacking statute does

---

[6]In Casteel, the defendant challenged the "presence of another" portion of the statute, while Jamal purportedly challenges the "bodily injury" element. However, we understand Jamal's argument to be a hybrid of the two–Jamal contends both that the injury itself was not serious, and that J.R.'s distance from the car prevented the

-10-

Appellate Case: 15-1263   Page: 10   Date Filed: 12/29/2015 Entry ID: 4350326

not require that the taking of a vehicle be the only or primary motive of the crime). Accordingly, we also deny Jamal's arguments in this regard. Because there was sufficient evidence that the injury to J.R. was indeed, serious, neither J.R.'s proximity (or lack thereof) to the vehicle itself nor the ultimate motive of the encounter with J.R. is dispositive.

### D. Firearms Offenses

Levon argues there was insufficient evidence to convict him of possessing and aiding and abetting in the possession of a firearm. Levon contends that the verdict was contrary to the evidence at trial, which, he asserts showed that Jamal was the only one possessing or using the firearm during the robberies. In support, Levon cites Rosemond v. United States, 134 S. Ct. 1240, 1249-50 (2014) (holding that in order to be convicted of aiding and abetting in the possession of a firearm during another crime, the defendant must know beforehand that his confederate will carry a gun, and that once he did know, he did not walk away). Levon argues that he did not know beforehand that his brother Jamal would have a gun during the robberies and did not have the opportunity to walk away once he did know. After reviewing the trial transcript, we find Levon's arguments in this regard disingenuous. At least two witnesses described Jamal's "gun walk"–the way Jamal walked with a limp when hiding a gun in his pants. The jury could easily infer that if these witnesses knew how Jamal looked with a hidden gun, so too did Levon. The government further points out that Cabbell did exactly what Levon asserts he could not do in order to avoid the firearm prosecution–once she realized Jamal had a gun, she left the April 15 robbery premises because she does not "rob people with guns." Finally, following the April 15 robbery, it was even more obvious that Levon knew about Jamal's gun during the April 24 robbery, and the evidence shows that at one point during the April

---

serious injury from being related to the car theft.

-11-

Appellate Case: 15-1263     Page: 11     Date Filed: 12/29/2015 Entry ID: 4350326

24 robbery, Levon actually held the firearm. Accordingly, this argument is without merit.

Jamal also argues the evidence is insufficient to convict him for possession of and brandishing a firearm in furtherance of a crime of violence. However, the evidence at trial clearly established he had a gun and used it during the robberies of J.R. and C.B. and during the carjacking. We understand Jamal's primary point on this issue to be that if we were to reverse the Hobbs Act and carjacking convictions, we would also need to vacate the firearms offenses that require predicate "crime of violence" offenses. Because we have not reversed Jamal's other convictions, his firearms arguments are without merit.

### E. Pretrial and Trial Error

Jamal argues that the district court should have granted his motion in limine to exclude any evidence of his alleged gang affiliation, arguing that any mention of gangs was unduly prejudicial. See United States v. Ford, 761 F.3d 641, 649-50 (6th Cir.) (holding that gang affiliation evidence is inadmissible if there is no connection between the gang evidence and the charged offense), cert. denied, 135 S. Ct. 771 (2014). The government counters that despite the district court's failure to exclude gang membership in limine, there was no mention of gangs at trial. Further, the district court's reasoning not to categorically exclude the evidence prior to trial–because it may have been necessary for context–was sound. See United States v. Johnson, 28 F.3d 1487, 1497 (8th Cir. 1994) (holding that evidence of gang association may be necessary to show the nature and extent of the association between defendants). We review the district court's admission or exclusion of evidence for an abuse of discretion. United States v. Sewell, 457 F.3d 841, 843 (8th Cir. 2006). Having carefully reviewed the trial transcript, we agree with the government's assertion that there was no evidence of gang affiliation at trial. There was extensive evidence of gang affiliation at Jamal's sentencing hearing. However,

as we understand Jamal's argument, he is not challenging the specific content of the sentencing hearing testimony but instead the hearsay nature of it, a subject we will address below. Accordingly, this point is denied.

Jamal next makes several arguments regarding allegedly erroneous jury instructions. First, in relation to the previously discussed Hobbs Act argument, Jamal asserts that the district court erred in refusing to give his requested instruction that "interfering with commerce" is an element of the crime. However, Jamal requested this instruction for Count 1, which was the *conspiracy* to commit Hobbs Act robberies. The instruction as given read, "at some time during the period of the conspiracy–that is, from a date unknown until about April 29, 2013–in the Northern District of Iowa, two or more persons reached an agreement or understanding to commit robberies of drug traffickers." The government points out that the instruction adequately informed the jurors to find Jamal guilty if he agreed with another to commit robberies of drug traffickers. Indeed, longstanding Eighth Circuit precedent supports the government's interpretation. See Nick v. United States, 122 F.2d 660, 673 (8th Cir. 1941) (holding that government did not need to prove that defendants knew the effect of their conspiracy would be to affect interstate commerce; but rather that they agreed to do something, the natural effect of which was to affect interstate commerce). Further, the government points out that "interstate commerce" was defined in the jury instruction directly preceding the challenged instruction, and was specifically included as an element of the offense regarding Counts 2 and 3, the actual Hobbs Act counts. We review the district court's jury instructions for an abuse of discretion and will reverse only if the instruction did not fairly and adequately represent the evidence and law. United States v. Manes, 603 F.3d 451, 458 (8th Cir. 2010). Because the instruction fairly and adequately represented the evidence and the law, we deny this point.

Jamal also argues the district court erred in instructing the jury on possession, relating to his conviction on Count 8 for prohibited possession of a firearm and

-13-

ammunition. Possession was defined in the instructions as follows: "A person possessed something if all three of the following are true: the person knew about it, and the person had physical control over it or a vehicle in which it was concealed or transported, or the power, or ability, to control it, and the person had the intention to control it . . . ." Jamal claims the words "or transported" after the word "concealed" was inconsistent with constructive possession. The gist of Jamal's argument is that there may have been a firearm in the car that he did not know about and thereby would not have had constructive possession of it. This argument is without merit. The district court's instruction required the jury to find that Jamal had knowledge of any firearm, and indeed, the evidence supports the jury's finding. Jamal carried a firearm at all pertinent times in the underlying crime spree. Jamal used the firearm during a traffic stop on one occasion, and used it as a weapon to hit both J.R. and C.B. on the head at other times. Because the instruction fairly and adequately represented the evidence and the law, we reject this point.

Jamal's final complaint about the jury instructions is the district court's failure to give a multiple-conspiracy jury instruction. As recounted above, Jamal argues that the government proved two conspiracies, but only alleged one in the indictment. A single conspiracy is comprised of people sharing common objectives under one general agreement. United States v. Benford, 360 F.3d 913, 914 (8th Cir. 2004). As earlier noted, we found that there was sufficient evidence for the government to establish one single conspiracy. Accordingly, Jamal's lack of success on the merits of the multiple- versus single-conspiracy claim precludes him from prevailing on his claim that the district court erred in refusing to give his "multiple conspiracies" jury instruction.

### F. New Trial

Based upon many of the foregoing arguments, Jamal argues that the weight of the evidence preponderates sufficiently against the verdicts so that a serious

Appellate Case: 15-1263     Page: 14     Date Filed: 12/29/2015 Entry ID: 4350326

miscarriage of justice will result unless a new trial is granted. Jamal focuses on the testimony of J.R. that he had told Cabbell prior to their April 15 encounter that he did not have any money to pay for sex, and therefore J.R.'s robbery did not affect interstate commerce. The standard for granting a motion for new trial is more lenient than for a judgment of acquittal; the court is allowed to vacate any judgment if the interests of justice so require. United States v. Knight, 800 F.3d. 491, 504 (8th Cir. 2015). However, the decision to grant or deny a motion for a new trial based upon the weight of the evidence is within the sound discretion of the trial court. Id. The district court thoroughly reviewed Jamal's request for a new trial and determined that the interests of justice did not so require. Given that we were not persuaded by Jamal's earlier discussed Hobbs Act arguments, we find no abuse of discretion in the district court's decision to deny a new trial.

### G. Sentencing

Jamal and Levon both appeal certain aspects of their sentences. We review the district court's sentencing factual findings, including relevant conduct, for clear error, and its construction and application of the Guidelines de novo. United States v. Howard, 759 F.3d 886, 889 (8th Cir. 2014). Further, the district court has broad discretion at sentencing concerning the kind and source of the information it receives. United States v. Garcia, 774 F.3d 472, 475 (8th Cir. 2014) (per curiam). Further, a sentencing proceeding does not carry the same evidentiary protections as a trial and the court may consider uncorroborated hearsay evidence if it has sufficient indicia of reliability. Id.

Jamal's calculated sentencing Guidelines range was 140-175 months on counts 1, 2, 3, 4, and 9, in addition to mandatory consecutive minimums of seven and twenty-five years on the 18 U.S.C. § 924(c) counts. The district court varied upwards and sentenced Jamal to life in prison, reasoning that due to a number of violent incidents, both in regards to the charged conduct, and previous uncharged conduct,

-15-

Appellate Case: 15-1263    Page: 15    Date Filed: 12/29/2015 Entry ID: 4350326

the court needed to protect the public from Jamal. In so doing, the court heard testimony about these events from several individuals at the sentencing hearing, some of which constituted hearsay. Jamal contends that the district court procedurally erred in relying upon this hearsay testimony because there was not sufficient indicia of reliability to render this testimony reliable. The challenged testimony from three witnesses involved Jamal's alleged role in a 2012 incident wherein he allegedly shot a member of a rival gang, J.E., ostensibly in retaliation for J.E. stabbing a member of Jamal's gang. Two of the challenged witnesses were police officers who were told by numerous people that Jamal had committed the shooting. The third witness was a paramour of J.E. She testified that when J.E. awoke from a coma, he told her that Jamal had shot him. Interestingly enough, J.E. testified at the sentencing hearing and alleged he "did not see" who shot him, nor did he recall the conversation with his girlfriend in the hospital. However, an overriding theme from numerous of the non-law-enforcement witnesses at the sentencing hearing was that they were there under subpoena and duress because they were members of various rival gangs in the Sioux City area. On the other side of the coin, numerous of these same witnesses were hoping to receive leniency in their various criminal sentences in return for government-favorable testimony. At bottom, given the tenor and tone of the sentencing hearing after thoroughly reviewing the transcript, we agree with the district court's finding that the paramour's detailed account of the events pre- and post-shooting have sufficient indicia of reliability such that the district court could rely upon it, despite the fact that her testimony identifying Jamal as the shooter was clearly hearsay.

Furthermore, the district court's overall sentencing decision to vary upwards to protect the public from Jamal was not substantively unreasonable. We "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 51 (2007). "[I]f the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district

-16-

Appellate Case: 15-1263     Page: 16     Date Filed: 12/29/2015 Entry ID: 4350326

court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. It was within the district court's considerable discretion to vary upwards and sentence Jamal to life in prison. The district court very thoughtfully considered Jamal's unusually active and violent criminal history for a defendant only twenty-three years old, and, it seems to us, rather reluctantly came to the conclusion that the only possible just sentence was life in prison. Accordingly, we affirm the district court's sentence.

Levon was subject to five-year and twenty-five-year mandatory sentences (360 months) for the 924(c) offenses. His Guidelines range was 84-105 months for the remaining counts. Levon requested that the district court sentence him to one day for the remaining counts, given the harshness of the 360-month mandatory sentences. The district court stated on the record that it would like to do just that, but felt it did not have the discretion to do so based upon our decision in United States v. Hatcher, 501 F.3d 931, 933-34 (8th Cir. 2007) (holding that a district court unreasonably varied downward in sentencing a defendant to one day for the crimes not subject to a mandatory minimum, solely because the mandatory sentence was 300 months). Levon argues that the district court erred when it ruled that it did not have discretion to impose a lower Guidelines sentence based upon the harshness of the mandatory minimums. We see no meaningful difference between the situation in Hatcher and what Levon requested in this case. Accordingly, the district court correctly noted his inability to sentence Levon as requested. Thus, we find that the district court's 40-month sentence, to be served consecutively with the 360-month sentence, for a total sentence of 400 months, was substantively reasonable and not an abuse of the district court's discretion.

Appellate Case: 15-1263    Page: 17    Date Filed: 12/29/2015 Entry ID: 4350326

## III. CONCLUSION

We affirm the judgments of the district court in this well-tried, multiple-count, joint-defendant criminal case.

_____